UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                              Chapter 7

RICHARD KOFSKY,                                     Case No. 05-12361 (ALG)

                              Debtor.

------------------------------------------------------------x
BRUCE SUPPLY CORP.

                              Plaintiff,

          - against -                              Adv. No. 05-2232 (ALG)

RICHARD KOFSKY

                              Defendant.
------------------------------------------------------------x

**MEMORANDUM OF OPINION DENYING PLANTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

A P P E A R A N C E S:

LAW OFFICES OF MARSHALL M. STERN
Attorneys for Bruce Supply Corp., Plaintiff
     By: Jeffrey Herzberg
        Marshall M. Stern
17 Cardiff Court
Huntington Station, New York 11746

LAWRENCE MORRISON, ESQ.
Attorney for the Debtor, Defendant
225 East 72nd Street
New York, New York 10022


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is a motion filed by plaintiff Bruce Supply Corp. ("Bruce Supply") for

partial summary judgment on its adversary complaint against the Debtor, seeking a

1

determination that its debt is not dischargeable pursuant to Bankruptcy Code § 523(a)(4).[1] For the reasons set forth below, the motion is denied.

## BACKGROUND

The Debtor and defendant in this adversary proceeding is the president and owner of N. Kofsky & Son, Inc., a New York corporation that provided licensed plumbing and water contracting services (the "Corporation").[2] Bruce Supply, the plaintiff in the adversary proceeding, is a New York corporation that sells building materials. It apparently provided the Corporation with supplies that the Corporation utilized pre-petition in the course of eight real estate improvement jobs. It claims in its complaint that, although the Corporation received payment in full on all eight projects, neither the Corporation nor the Debtor paid Bruce Supply for the supplies it provided in connection with those projects.

Bruce Supply has filed a proof of claim against the Debtor in the amount of $59,147.29 for the supplies furnished to the Corporation pre-petition. It claims that the Debtor is personally liable for the corporate debt on several grounds, and the Debtor has not contested the issue of personal liability on this motion.[3] The sole issue raised on this motion is whether as a matter of law the debt is non-dischargeable under § 523(a)(4) of the Bankruptcy Code.

---

[1] Bruce Supply has not moved for summary judgment on the following claims raised against the Debtor in its complaint: (i) non-dischargeability under § 727(a)(2) for the transfer or concealment of property with the intent to hinder, delay or defraud creditors; (ii) non-dischargeability under § 727(a)(5) for failure to explain losses and deficiencies of assets; and (iii) non-dischargeability under § 523(a)(2) for material misrepresentations made to induce the extension of credit.

[2] On April 7, 2005, the Debtor and the Corporation both filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The cases are being jointly administered for procedural purposes only.

[3] Both the Debtor and the Corporation list Bruce Supply on their schedules as a creditor holding an undisputed, non-contingent, liquidated unsecured claim in the amount of $45,000.

**DISCUSSION**

Bruce Supply has moved for summary judgment on its claim of non-dischargeability under § 523(a)(4), which excepts from discharge any debt arising out of an individual debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[4] Specifically, Bruce Supply argues that the Debtor's failure to account for and pay over funds that the Corporation received for the materials that Bruce Supply had provided pre-petition constituted "defalcation while acting in a fiduciary capacity."

Bruce Supply's argument is grounded in Article 3A of New York Lien Law (§ 70 *et seq.*), which provides that funds received by a contractor for an improvement of real property constitute assets of a trust for the benefit of those who perform labor and/or furnish supplies that contribute to the improvement of the property, including subcontractors, architects, engineers, laborers and materialmen. N.Y. Lien Law §§ 70.1, 70.6, 71.2. The contractor, as statutory trustee, stands in a fiduciary relationship with these beneficiaries upon receipt of payment and must apply the trust assets to pay the beneficiaries in full before using any remaining assets for other purposes. N.Y. Lien Law § 72.1; *Burt Bldg. Material Corp. v. Silba (In re Silba)*, 170 B.R. 195, 200-01 (Bankr. E.D.N.Y. 1994). The contractor is also under a duty to maintain a proper accounting of trust assets, and any failure to do so creates a presumption of diversion of assets to non-trust purposes. N.Y. Lien Law § 75.4.[5] It is not disputed on this motion that in this case statutory trusts were created under the New York Lien Law when the Corporation received payments for work done on the improvement projects, that Bruce Supply was a beneficiary of the

---

[4] In accordance with Bankruptcy Rule 7056, which incorporates Fed. R. Civ. P. 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005).

[5] New York Lien Law § 75.4 provides in pertinent part: "Failure of the trustee to keep the books or records required … shall be presumptive evidence that the trustee has applied or consented to the application of trust funds actually received by him … for purposes other than a purpose of the trust …."

3

trusts, that the Corporation, as statutory trustee, was required to remit payment to Bruce Supply before using any trust assets for its own purposes, and that the Corporation did not satisfy its obligations to Bruce Supply.

It has also been assumed by the parties to this matter that the Corporation has been guilty of "defalcation." The Bankruptcy Code does not define "defalcation," but there are cases, both before and after the adoption of the Bankruptcy Code in 1978, that have held non-dischargeable the debts of individuals doing business in their own names who have dealt with trust assets in violation of Article 3A of the New York Lien Law. In *In re Silba*, for example, the court held "that defalcation consists of any failure to account for, or any diversion of, trust assets, other than for payment of claims of trust beneficiaries or for other permitted purposes." 170 B.R. at 202. While defalcation in other contexts has been held to require a level of intent greater than mere negligence, *Denton v. Hyman (In re Hyman)*, 335 B.R. 32, 40 (S.D.N.Y. 2005), a trustee's failure to pay Lien Law trust assets over to the beneficiaries has been found sufficient to support a finding of defalcation. *Giarrusso Building Supplies, Inc. v. Hogan (In re Hogan)*, 193 B.R. 130, 139 (Bankr. N.D.N.Y. 1995); s*ee also In re Kawczynski*, 442 F. Supp. 413 (W.D.N.Y. 1977) (Bankruptcy Act case).

Bruce Supply contends that the Debtor, by virtue of his position as president of the Corporation, was acting in a fiduciary capacity when the Corporation received payment on the improvement jobs and that his failure to assure that payments were applied in accordance with the Lien Law constituted "defalcation while acting in a fiduciary capacity" within the meaning of § 523(a)(4) of the Bankruptcy Code. For support, Bruce Supply relies heavily on *In re Polidoro*, 12 B.R. 867 (Bankr. E.D.N.Y. 1981), one of the few bankruptcy court cases to consider the liability under § 523(a)(4) of the officer of a corporation where the corporation was

4

05-02232-alg    Doc 13    Filed 09/19/06    Entered 09/19/06 15:26:45    Main Document
Pg 5 of 12

the statutory trustee. In *Polidoro*, the debtor was president of a contracting company that had purchased materials from the plaintiff, a building supply company, for use in the improvement of real property. The corporation received payment for the improvement but failed to use the funds to pay its obligation to the plaintiff in accordance with the New York Lien Law. The plaintiff brought an action in state court against both the contracting company and its president for breach of the trust created under the New York Lien Law and obtained summary judgment against both defendants on default. Thereafter, the individual defendant filed a petition under Chapter 7 of the Bankruptcy Code, and the plaintiff brought an action for non-dischargeability under § 523(a)(4), claiming that the debt arose out of the debtor's defalcation while acting in a fiduciary capacity.

The Bankruptcy Court held that there was no substantial question that the corporation was liable for diversion of trust assets under state law. It went on to hold that the individual defendant, the debtor, was personally liable for the corporation's breach of trust, stating "Either participation in the use of trust funds for other business purposes, or mere knowledge of this wrong, is sufficient to give rise to personal liability for breach of trust." *Polidoro*, 12 B.R. at 871 (citations omitted). The Court then held that the debt owed to the plaintiff was non-dischargeable because the debtor stood in a fiduciary relationship with the plaintiff prior to the corporation's misapplication of funds:

> Since the New York courts have made the liability of managing officers coextensive with that of the corporate contractor, provided they have participated in or have knowledge of the misapplication of trust funds, see *Schwadron v. Freund*, 69 Misc.2d 342, 329 N.Y.S.2d 945 (1972), the conclusion is inescapable that the debtor herein was a fiduciary prior to his corporation's misapplication of trust funds.

*Id*. (additional citations omitted). Bruce Supply asserts that *Polidoro* is determinative as to all issues raised in the instant dischargeability action.

5

*Polidoro*, however, does not answer all of the questions raised in this case.  First, *Polidoro* did not deal extensively with the question of proof of liability under state law, perhaps because there were already default judgments against *both* the corporate and individual defendants.  The New York courts, however, have made it clear that a beneficiary of a Lien Law trust is not entitled to summary judgment against an officer of a corporate trustee merely by alleging that the corporate defendant received funds, and failed to pay over the appropriate portion, and that the individual defendant failed to explain the non-payment.  The statutory presumption in § 75(4) of the Lien Law that failure to keep appropriate records is presumptive evidence that the trustee has misapplied trust funds does not run against the contractor's officers and directors.  *See Forest Electric Corp. v. Karco-Davis, Inc.*, 259 A.D.2d 303, 686 N.Y.S.2d 411, 412 (1st Dep't 1999); *see also Schwadron v. Freund*, 69 Misc.2d at 349.  *Forest Electric Corp.* is instructive.  There the subcontractor had sued the corporate contractor and its sole officer and director for diversion of funds under Article 3A of the Lien Law.  It obtained a judgment against the corporation that was affirmed on appeal.  However, with respect to the liability of the individual defendant, Davis, the Appellate Division held that the plaintiff had not been entitled to summary judgment merely on the basis of proof of Davis' status as the corporation's only officer and the presumption of diversion.  The Court said, "Although the statutory presumption of diversion (Lien Law §75[4]) was properly raised against [the corporate defendant] in its capacity as trustee, and that presumption together with the submitted proof of the alleged diversion warranted the motion court's grant of summary judgment against [the corporate defendant], the same presumption is not applicable against Davis individually since, without the benefit of the

6

presumption, no conclusive case of Davis' liability for the diversion of trust funds was made out." 686 N.Y.S.2d at 411;[6] s*ee also Ace Hardwood Flooring Co., Inc., v. Glazer*, 74 A.D.2d 912, 426 N.Y.S.2d 69 (2d Dept. 1980) ("The questions as to whether [the individual defendants] had converted or improperly diverted trust funds held by the corporate defendant pursuant to article 3A of the Lien Law presents issues of fact which can only be resolved after a trial. Liability cannot be imposed upon said individuals merely because they were officers and agents of the defendant corporation at the time such trust funds were converted.") (citations omitted).

      The situation is the same here, even if the Debtor has chosen not to contest the issue of personal liability in his schedules. It is recognized that a party has an obligation to respond to a motion for summary judgment by providing evidence to support the essential elements of its case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *DePippo v. Kmart Corp*., 335 B.R. 290, 294-95 (S.D.N.Y. 2005), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986). It is further recognized that the Debtor's affidavit is very general, and that he admits to some level of knowledge or involvement in the Corporation's failure to pay over trust assets to Bruce Supply. Nevertheless, the Debtor denies knowing participation in the misapplication of trust assets, and his role, if any, in the Corporation's diversion of assets remains at issue. The moving party on a motion for summary judgment bears the burden of demonstrating the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249; *see also Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). When the court considers a motion for summary judgment, it must resolve all ambiguities and draw all permissible factual inferences in favor of the party

---

[6] The Court also reversed the lower court's grant of summary judgment *to* Davis, finding that there were issues of fact raised on the basis of his "admissions as to the unauthorized use of certain entrusted funds" and his status as sole officer and director of the corporate defendant.

7

against whom summary judgment is sought. *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1318 (2d Cir. 1975); *see also Ames Dep't Stores, Inc*., 161 B.R. at 89. On this motion for summary judgment, resolving all ambiguities in favor of the Debtor, Bruce Supply has not satisfied its burden of demonstrating under § 523(a)(4) that the Debtor committed a "defalcation while acting in a fiduciary capacity."

The question of proof of diversion takes on particular significance once it is realized that Bruce Supply was not the only beneficiary of the trust that was presumably created when the Corporation received funds as a general contractor. In addition to other subcontractors on the job, § 71.2 of the Lien Law identifies other beneficiaries of the trust to whom payments could appropriately be made, including laborers, materialmen, certain taxing authorities and issuers of surety bonds. Before liability can properly be imposed on the Debtor, it is necessary to determine how the funds in the various trusts at issue were spent and whether they were diverted to inappropriate purposes. On the present record we do not even know whether the Corporation had any funds outstanding at the time of the petition that were designated for the eight trusts in which Bruce Supply claims an interest.

Beyond the question of proof, *Polidoro* held that once some degree of knowledge and control is shown, the liability of a corporation and its principals for diversion of trust assets is "coextensive" and that this leads inevitably to a finding that the individual has acted "in a fiduciary capacity" under § 523(a)(4). As authority, *Polidoro* cited *Schwadron v. Freund*, 69 Misc.2d 342, 329 N.Y.S.2d 945 (Sup. Ct. Rockland Co. 1972), which in turn relied on several older New York cases, as well as Scott on Trusts, for the proposition that an officer or director of a corporate trustee may be personally liable to the beneficiaries of a trust administered by the corporation. *See Wechsler v. Bowman*, 285 N.Y. 284, 34 N.E.2d 322 (1941); *Santa Barbara v.*

8

*Avallone & Miele*, *Inc.*, 270 N.Y.1, 6, 99 N.E. 777 (1936); *Anderson v. Daley*, 38 App. Div. 505, 511, 56 N.Y.S. 511, 515 (2d Dept. 1899); s*ee also* 4 Scott, The Law of Trusts, § 326.3 (4th ed. 2001). It appears settled that, as Scott summarizes, "Any officer who knowingly causes the corporation to commit a breach of trust causing loss to a trust administered by the corporation is personally liable for the loss to the beneficiaries of the trust." Scott at § 326.3. But the theory on which liability has been imposed is not certain. Some of the older New York cases speak of the employee as being "in the position of a trustee *de son tort.*" *Santa Barbara v. Avallone & Miele*, *Inc.*, 270 N.Y. at 10; *Anderson v. Daley*, 38 App. Div. at 510.[7]  A recent case speaks of an individual's "conversion of the trust assets, even though he was acting as an officer of the corporation." *Fleck v. Perla*, 40 A.D. 2d 1069, 1070, 339 N.Y.S.2d 246, 248 (4th Dept. 1972). Other cases appear to impose liability for "participation in a breach of trust".  *See Atlas Bldg. Sys., Inc. v. Rende*, 236 A.D.2d 494, 495, 653 N.Y.S.2d 694, 695 (2d Dept. 1997); *see also Medco Plumbing, Inc, v. Sparrow Construction Corp.*, 22 A.D.3d 647, 802 N.Y.S.2d 730 (2d Dept. 2005).

The basis for liability does not appear very important under state law, but the distinction is important for purposes of dischargeability of a debt under § 523(a)(4). In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934), the Supreme Court held that the trust whose breach gave rise to non-dischargeability under the statutory predecessor to § 523(a)(4) could not arise out of the very act of wrongdoing charged against the defendant. Justice Cardozo wrote: "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio.  He must have been a trustee before the wrong and without reference thereto." *Davis*, 293 U.S. at 333. New York law does not make

---

[7] A trustee de son tort is a "person who is treated as a trustee because of his wrongdoing with respect to property entrusted to him or over which he exercised authority which he lacked."  Black's Law Dictionary (1990).

9

an officer or director of a corporate contractor a "trustee" under the Lien Law, and it does not eliminate for individuals in the construction business all of the protection against individual liability that the corporate form ordinarily provides. If the liability of a corporate officer is secondary, it must be clear that he was "a trustee before the wrong and without reference thereto." Moreover, the issue takes on particular importance because of the principle that exceptions to dischargeability should be literally and strictly construed against the creditor and in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562 (1915); *Household Fin. Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir. 1977); *see also In re Krautheimer*, 210 B.R. 37, 46 (Bankr. S.D.N.Y. 1997), quoting *Matter of Martonak*, 67 B.R. 727, 728 (Bankr. S.D.N.Y. 1986) ("Non-dischargeability is "perceived to be a punitive exception to the 'fresh start' policy and should be found reluctantly.""); *cf. In re Hyman*, 335 B.R. 32, 40 (S.D.N.Y. 2005) (defalcation requires "some level of mental culpability" and "more than mere negligence"), quoting *Zohlman v. Zoldan (In re Zoldan),* 226 B.R. 767, 772 (S.D.N.Y. 1998).

*Polidoro* dealt with this issue in its conclusion, quoted above, that "the New York courts have made the liability of managing officers coextensive with that of the corporate contractor provided they have participated in or have knowledge of the misapplication of trust funds..." 12 B.R. at 871.[8] As discussed above, however, the liability of the corporation and that of the managing officers is not entirely "coextensive," and the elements of proof are certainly different for the corporation and its managing officers with control over the trust funds. Nevertheless, the

---

[8]In support of its conclusion that the individual debtor's liability was coextensive with that of the corporation, *Polidoro* cited, *inter alia*, *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir. 1980), and commented that *Carey Lumber* had construed "analogous provisions of Oklahoma law." 12 B.R. at 871. However, the Oklahoma statute at issue in *Carey Lumber*, unlike the New York law, expressly made the liability of officers coextensive with that of the company. *See* 42 O.S. § 153(2) ("If the party receiving any money under Section 152 shall be a corporation, such corporation and its managing officer shall be liable for the proper application of such trust funds.") *Polidoro* also cited *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir. 1976), which is directly on point and held that the officer of a corporate general contractor was a fiduciary prior to the wrongful act in question because, among other things, he had to obtain a license to enter the construction industry under applicable New Mexico law.

10

more recent cases do impose liability without any implication that it results from the act in question, and a managing officer of a corporation that has received funds subject to Article 3A of the Lien Law could have no doubt that he was potentially a fiduciary with respect to such funds and personally liable for their misappropriation.

In *Andy Warhol Found. for Visual Arts, Inc., v. Hayes (In re Hayes)*, 183 F.3d 162, 166 (2d Cir. 1999), the Second Circuit made it clear that an individual may act in a "fiduciary capacity" within the meaning of § 523(a)(4), despite the absence of an express or technical trust. Based thereon and on the established New York law that imposes personal liability on corporate officers who direct or knowingly participate in breaches of a trust created under Article 3A of the New York Lien Law, the Court is satisfied that an officer with direct control over the application of trust funds acts "in a fiduciary capacity" prior to the wrongful act, and that the resulting debt may be non-dischargeable in the officer's subsequent bankruptcy. Nevertheless, Bruce Supply has not made out a *prima facie* case on its motion for summary judgment that there was a diversion of funds, that the funds in the various trusts were applied improperly, and that the Debtor was responsible under applicable precedent. As discussed above, Bruce Supply has the burden of proof and has not satisfied it.

## CONCLUSION

Having resolved all ambiguities and drawn all permissible factual inferences in favor of the Debtor, the Court concludes that Bruce Supply is not entitled to judgment on its § 523(a)(4) complaint as a matter of law, and its motion for partial summary judgment is denied. The Debtor is directed to settle an appropriate order on three days' notice.

Dated: New York, New York
September 19, 2006

       */s/ Allan L. Gropper*
       UNITED STATES BANKRUPTCY JUDGE